## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **STANTON TERRANOVA,** | **C.A. No.** |
| *Plaintiff,* | |
| | **PLAINTIFF DEMANDS TRIAL BY JURY** |
| v. | |
| **EXAMSOFT WORLDWIDE, INC.,** | |
| *Defendant.* | |

## COMPLAINT

This action is commenced by STANTON TERRANOVA (hereinafter "Plaintiff") against EXAMSOFT, INC. (hereinafter "Defendant") to remedy and seek relief related to violations of law including consumer protection statute violations, breach of contract, breach of covenant of good faith and fair dealings, breach of warranty, intentional and negligent misrepresentation, and other claims related to the significant failures of Defendant's software during the summer of 2014 bar examination which resulted in proximate and extensive harm to Plaintiff.

## PARTIES

1. Plaintiff Stanton Terranova is domiciled in the City of Westerly, County of Washington, in the State of Rhode Island.

2. ExamSoft Worldwide, Inc. is a corporation existing under the law of the State of Florida with its principle place of business domiciled in the City of Delray Beach, County of Palm Beach, and State of Florida. Defendant regularly conducts business throughout the State of Rhode Island and Massachusetts and contracts with the residents of these states.

1

## JURISDICTION AND VENUE

3. This Court has jurisdiction to hear the Complaint pursuant to 28 U.S.C. § 1332. There is complete diversity between the Plaintiffs and all Defendants and the amount in controversy is more than $75,000.

4. This court also has jurisdiction to hear the Complaint pursuant to 15 U.S.C. § 2310(d)(2).

5. This Court has personal jurisdiction over Defendant because Defendant has the requisite minimum contacts with the State of Rhode Island and availed itself of the rights and privileges in Rhode Island by conducting interstate commerce, actively advertising to, and contracting with residents of Rhode Island; this Court exercising personal jurisdiction over Defendant does not offend the traditional notion of fair play and substantial justice.

6. Venue of this action lies pursuant to 28 U.S.C. § 1391(b) and because defendant is subject to this Court's personal jurisdiction with respect to such action.

## CLASS ACTION AND OPT OUT

7. Following the Defendant's software failure during the first day of testing during the July 2014 bar exams, specifically the July 29, 2014 bar exam, several class action suits were filed in various jurisdictions.

8. Plaintiff Terranova timely opted out of the class action on or about July 11, 2015 because the facts in his case establish that he was harmed and due damages equal more than would be provided by the class action.

9. The class action settlement was approved and following the opt-out period, those class-members that did not opt out that filed a claim received approximately $90.

10. The approved settlement for the class action case in the Southern District of the Florida Federal Court, CA No. 1:14-cv-22950, was closed October 14, 2015.

## FACTUAL ALLEGATIONS

11. Plaintiff Stanton Terranova took the written sections of the Rhode Island bar examination on July 29th, 2014 and the Massachusetts bar examination on July 31st, 2014.

12. Plaintiff Terranova typed his answers to both the Rhode Island and Massachusetts state Bar Exams.

13. To type answers for the Rhode Island and Massachusetts state Bar Exams, examinees are required to use only Defendant ExamSoft's system, software, and/or platform to type answers to the essay portion of the bar exams on their own computer.

14. Defendant ExamSoft marketing material and licensing agreement warranted and/or represented expressly and/or impliedly its exam taking system, software, and/or platform for uploading answers to the exam provided an "easier" and "reliable" way to take the bar exam and take "some of the stress and fatigue out of the exam day."

15. Defendant further warranted expressly and impliedly that the software would operate reliably, provide a stress-free and effective process for computer-based testing ("CBT").

16. Plaintiff saw and detrimentally relied upon Defendant ExamSoft's variety of express and/or implied representations or warranties regarding its exam-taking system, software, and/or platform, including but not limited to:

      a) The system being "fully supported" by customer service staff so examinees "are never left hanging";

      b) Emphasizing that examinees have access to industry-leading [customer] support when needed; and

c) Its exam-taking system, software, and/or platform reduces reliability and network issues associated with CBT by taking Wi-Fi out of the equation"; and

d) Defendant ExamSoft held itself out to the public as a maker of reliable, secure, and easy-to-use software for test taking administration.

17. Uploading Bar exam answers on the essay day is required to be done within the timeframe set by the bar committee in the state and is essential to passing the exams; if essay exam answers are not uploaded by the time designated by the state, automatic failure results.

18. Defendant ExamSoft provided the upload service, as well as backup ways to upload, and promised customer service if problems were incurred during upload because of the criticality of uploading answers within a matter of hours after the bar exam essay portion ends.

19. In reasonable reliance on Defendant ExamSoft's warranties and representations, Plaintiff Terranova paid Defendant ExamSoft for use of Defendant's system, software, and /or platform.

20. Plaintiff Terranova would not have purchased the system, software, and /or platform had he been aware of its potential malfunction, crash, or significant failure that resulted on July 29, 2014.

21. July 29, 2014 was the Rhode Island bar essay portion of the full exam and the multiple choice portion for Rhode Island was the next day on July 30, 2014.

22. Scores for the multiple choice portion for the bar taken in Rhode Island and other states on July 30, 2014 are transferred and added to the essay portion of the Massachusetts bar examination on July 31, 2014.

23. Plaintiff Terranova sat for the July 29, 2014 essay portion of the Rhode Island bar examination.

24. During testing, there were noticeable malfunctions or defects in the software causing distress during the essay portion including the software malfunctioning during testing such as deleting

portions of answers, software that shut down during the exam or otherwise became inoperable, and abusive on-site customer support staff.

25. On July 29, 2014 after the essay exam time ended Plaintiff Terranova exited the testing site in Providence by approximately 5:00 PM.

26. Examinees were instructed to leave the exam room and upload their answers before 11:00 PM that evening or failure would result.

27. Plaintiff Terranova drove over an hour back to his home in Westerly Rhode Island and began trying to upload.

28. Plaintiff Terranova was unable to upload using the traditional trained method and the backup method put in place by Defendant if the traditional upload process failed.

29. Plaintiff Terranova tried unsuccessfully to upload by both methods repeated for hours on July 29, 2014 instead of studying for the multiple-choice section or resting.

30. Plaintiff Terranova received multiple error and failure e-mails from Defendant ExamSoft trying to upload his Rhode Island bar exam answers.

31. Plaintiff Terranova also spent hours contacting the customer service line at ExamSoft only to reach a busy signal or unanswered calls.

32. Plaintiff Terranova never spoke to an ExamSoft representative on the evening of July 29, 2014 despite multiple calls to their support line.

33. The inability to upload answers by the deadline and lack of ability to reach ExamSoft's alleged fully available customer service caused increasing distress and took away time from final study for the multiple-choice section starting early on July 30, 2014.

34. What Plaintiff Terranova did not know was that there was a nationwide failure by ExamSoft due to a software defects and malfunction that could have been prevented by Defendant.

35. The software defects included not just the malfunctions using the software while testing, but a complete inability to upload answers or reach customer service staff.

36. ExamSoft did not sufficient customer service staff available to address the nationwide failure of the software that prevented upload of exam answers for thousands of bar examinees across the country.

37. Moreover, Defendant did not have a contingency plan to notify bar examinees of the failures of the software.

38. Plaintiff Terranova eventually got an email address from a friend and emailed his answers hoping his answers would get posted that way.

39. Due to his distress over the unsuccessful upload of his bar exam answers and hours of stress and time lost, Plaintiff did not go to sleep until later than planned and lost hours that could have been used as final preparation for the multiple-choice section the following day.

40. Plaintiff went to bed not knowing for sure if his answers were ever entered or uploaded or if he had automatically failed.

41. Plaintiff also did not get quality sleep due to the hours of distress and uncertainty about the upload of his answers.

42. On the morning of July 30, 2014, Plaintiff Terranova woke at 4:00 AM to arrive at the testing center in Providence, over an hour from his home, to arrive before the 7:00 AM required arrival time to attempt to get confirmation of his uploaded essay answers.

43. Plaintiff and other Rhode Island examinees were not notified of the MBE extension as a result of the previous day's ExamSoft nationwide malfunction until inside the MBE at 7:45 AM.

44. Due to ExamSoft's defects and malfunctions, lack of customer service help, and conflict ting emails, on July 29, 2014, the night before sitting for a full day of multiple choice testing on July 30, 2014, Plaintiff Terranova:

    a) lost hours of exam preparations time for the multiple choice section;

    b) lost hours of sleep;

    c) slept uneasily;

    d) woke up several times during the few hours he had to sleep;

    e) suffered from anxiety throughout the night;

    f) was not rested on the morning of July 30, 2014;

    g) was anxious about the July 30, 2014 testing day due to being unsure if his essay answers were accepted and lack of preparation time for the multiple-choice section;

    i) had trouble focusing for the July 30, 2014 testing day; and

    j) experienced reduced reading comprehension due to fatigue, stress, and lack of sleep.

45. Plaintiff Terranova believed, before even receiving his results, that the stress and hours lost caused by ExamSoft's software defects and malfunctions impacted, for the worse, his scores on the multiple-choice section.

46. In Rhode Island, if the multiple-choice section does not have a score of 128 the essays were not even read and the examinee automatically fails the exam.

47. Plaintiff Terranova did not know it yet but due to his reduced abilities on July 30, 2014, he scored two points below the cut off of 128 to have essays read and scored; Plaintiff scored a 126 on the multiple choice.

48. In Massachusetts, the scores from the Massachusetts essay section on July 31, 2014 and the multiple choice taken in another state or Massachusetts on July 30, 2014 are combined.

49. On July 31, 2014, Plaintiff Terranova sat for the Massachusetts essay portion of the exam and had no choice but to transfer in his multiple choice, which he knew was lower than his normal performance, from the Rhode Island testing on July 30, 2014.

50. On July 31, 2014, additionally because of the stress of the upload malfunctions on July 29, 2014 in Rhode Island, Plaintiff Terranova cut his time short on the essays to begin upload before the system became overloaded again, missing out on a few key minutes of testing time.

51. As it turns out, Plaintiff Terranova's choice was smart to at least get his answers uploaded because *again* in Massachusetts on July 31, 2014, the ExamSoft system was unable to accommodate examinees' answers at the time of upload at the exam's official completion, with some examinees again trying for hours to upload after completion of the exam.

52. As to results, using the combined scores of essays and multiple choice, Plaintiff Terranova failed the Massachusetts bar exam by a miniscule total of 6 points.

53. Thus, due to the ExamSoft defects and malfunctions on July 29, 2014, Plaintiff Terranova failed both Rhode Island and Massachusetts bar exams by slivers of points.

54. These few missing points to pass both bars are attributable wholly to the multiple-choice section because of the aforesaid condition Plaintiff Terranova was in on July 30, 2014 due to ExamSoft's failures.

55. Supporting the fact that the few missing points to pass both bars are attributable wholly to the multiple-choice section is that Plaintiff Terranova's practice scores on the multiple choice on bar prep software outpaced his *actual* bar exam score on multiple choice section (126) by 10 to 15 points on average.

56. Importantly, it is a known fact that bar prep multiple choice practice tests explained in bar prep as scores that underestimate actual multiple-choice bar performance; often bar prep practice

tests on multiple choice result in scores that are 10 to 15 points *lower* than ultimate performance on the actual bar multiple choice.

57. Upon information and belief, bar prep courses intentionally make the multiple-choice harder than the actual test; however it is fact that bar prep students *consistently* score notably *higher* on the actual bar exam multiple choice as compared to bar prep practice tests.

58. In the case of Plaintiff Terranova, his result was the *opposite*; he scored 10 to 15 points *lower* on the actual bar as compared to bar prep test scores.

59. Such scoring evidence supports that Plaintiff Terranova failed the Rhode Island and Massachusetts Summer 2014 bar exams as a result of ExamSoft's acts and omissions.

60. Notably, and also supporting that the nationwide ExamSoft software stress and lack of sleep on July 29, 2014 caused by defects and malfunctions resulted in multiple choice scores for many examinees, including Plaintiff Terranova, that were several percentage point drops, across states, from the July 2013 multiple choice scores.

61. Also notably, when Plaintiff Terranova took the February 2015 bar exam in New York, his multiple choice score was nearly 20 points higher on the multiple choice section as compared to his performance on July 30, 2017, and with virtually no additional preparation.

62. Plaintiff Terranova passed the February 2015 New York bar examination.

63. However, as a result of failing the July 2014 bar examination in Rhode Island and Massachusetts, Plaintiff Terranova was forced to work as a law clerk as Plaintiff was unable to attain a job in New York; this would have required moving which became infeasible after passing the New York bar.

64. Plaintiff Terranova's pay as a law clerk was minimal compared to pay as a lawyer.

65. Plaintiff Terranova experienced lost wages due to failure on the July 2014 bar examination.

66. At all relevant times Defendant ExamSoft knew the criticality of its system, software, and /or platform's working effectively.

67. Upon information and belief, the malfunction on July 29, 2014 prohibiting uploads and customer support was caused by a preventable defect in the software triggered by the volume of uploads.

68. However, the volume of uploads was no different; in fact, Defendant ExamSoft knew the expected volume of exams, stating in a letter to Dean of law schools across the country, "[t]his week's overall exam volume was almost the same as last year's and lower than other weekly periods for final exams. So the volume itself was not the challenge."

69. Defendant ExamSoft's system, software, and /or platform failed on the night of July 29, 2014 in a way that was preventable, violating warranties and representations..

70. Defendant ExamSoft failed to sufficiently or adequately provide servers and or server space which was preventable, violating warranties and representations.

71. Defendant ExamSoft failed to retain and / or employ sufficient support staff which was preventable, violating warranties and representations.

72. As a direct and proximate result of ExamSoft's act and omissions, Plaintiff Terranova failure of the July 2014 Rhode Island and Massachusetts bar exams by slivers of points.

73. As a direct and proximate result to failing the July 2014 Rhode Island and Massachusetts bar exams, Plaintiff suffered lost wages, earning potential, benefit and entitlements of having his law license after the July 2014 bar examination, experienced substantial public and private shame, suffered emotional distress and mental anguish resulting in physical injury, incurred extensive costs for preparing for and taking these July 2014 and additional bar examinations, and experienced other damages.  Damages continue to date.

## COUNT I

### VIOLATION OF MAGNUSON – MOSS ACT

#### *15 U.S.C. § 2301, et seq.*

74. Plaintiff incorporates by reference ALL paragraphs above as if fully set forth herein.

75. That ExamSoft SofTest software is a "consumer product" as defined pursuant to 15 *U.S.C.* §2301(1) because it is a tangible software product purchased by a large proportion normal consumers for use in educational purposes and use in easing exam taking in a variety of situations including professional examination.

76. Plaintiff is a "consumer," as defined pursuant to 15 *U.S.C.* § 2301(3).

77. ExamSoft is a "warrantor" and "supplier" as defined pursuant to 15 *U.S.C.* §2301(4)-(5).

78. That Plaintiff is in privity with ExamSoft arising from the purchase and download of ExamSoft's software directly from ExamSoft.

79. ExamSoft provided written warranties through their website and marketing materials that meet the definition of the Act, as "a written affirmation or promise that the material or workmanship is defect-free or will meet a specified level of performance over a specified period of time" at no extra charge to users under § 2301(6)(a).

80. ExamSoft provided written warranties through their website, marketing materials, and communications with users and warranted, in writing, that ExamSoft would repair and otherwise remedy the problem; as such, ExamSoft's warranty also meets the definition of the Act where it defines written warranty in the alternative as "a written undertaking to . . .repair, . . .or otherwise remedy a product if it fails to meet specifications set forth" at no extra charge to users under § 2301(6)(b).

81. ExamSoft also provided Plaintiff with "implied warranties," as that term is defined in 15 U.S.C. § 2301(7).

82. ExamSoft provided a service contracts, defined as a written "contract to perform, over a fixed period of time or for a specified duration, services relating to the maintenance repair of a consumer product" by providing technical staff and holding them out to consumers as having a sole purpose of performing service on the software during the period of the licensing agreement. § 2301(8).

83. Because of written warranties and/or the service contract, ExamSoft is prohibited from disclaiming any implied warranties, including the warranty of merchantability under the Uniform Commercial Code and state law. § 2308(a)(c).

84. ExamSoft's software and supporting systems were defective and failed as described in the incorporated paragraphs 1-73.

85. ExamSoft failed to correct, prepare for or properly respond to the massive malfunctions.

86. ExamSoft therefore breached the express warranties under the Act when the software and the upload systems did not perform reliably as warranted and were not supported as warranted.

87. ExamSoft breached the express and implied warranties under the Act when software was failed, malfunctioned, was overloaded, and not supported by the customer service that would "never leave you hanging" as warranted.

88. ExamSoft's conduct as described herein, including ExamSoft's knowledge of the defects inherent in its software, supporting systems, inaction, and lack of customer support breached written and implied promises, warranties, and representations.

89. In its capacity as a warrantor, and by the conduct described herein, any attempts by ExamSoft to limit the implied warranties in a manner that would exclude coverage of the defective software

and systems is unconscionable and, accordingly, any such effort to disclaim or otherwise limit liability for the defective software and supporting systems is null and void.

90. Thus ExamSoft violated the Magnuson - Moss Act as described in the facts incorporated from paragraphs 1-73.

91. The aforesaid acts and omissions constitute recklessness, intentional, and willful or wanton misconduct which warrant exemplary and/or punitive damages.

92. As a direct and proximate result of Defendant's breach, Plaintiff suffered the aforesaid injuries and damages.

## COUNT II
### VIOLATION OF RHODE ISLAND'S DECEPTIVE TRADE PRACTICES ACT
### *Rhode Island General Laws* § 6-13.1-1 *et seq.*

93. Plaintiff incorporates by reference ALL paragraphs above as if fully set forth herein.

94. The Rhode Island Deceptive Trade Practices Act, hereinafter referred to as DTPA, prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce pursuant to *Rhode Island General Laws* § 6-13.1-2 *et seq.*.

95. The acts of Defendant ExamSoft as to Plaintiff are unfair and deceptive acts or practices within the meaning of the *Rhode Island General Laws* § 6-13.1-2 *et seq.* (DTPA).

96. Pursuant to *R.I. Gen. Laws* §6-13.1-1(6) under DTPA, ExamSoft advertised, made uniform representations, and therefore engaged in unfair or deceptive acts by engaging in acts or practices that are unfair or deceptive to the consumer to mislead or deceive the public in a material respect and specifically include:

   a. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another §6-13.1-1(6)(vii);

   b. Advertising goods or services with intent not to sell them as advertised §6-13.1-1(6)(ix);

    c.   Advertising claims concerning performance of the product§6-13.1-1(6)(xvii);

    d.   Using any other methods, acts or practices which mislead or deceive members of the public in a material respect §6-13.1-1(6)(xiv);

    e.   Engaging in acts or practices that are unfair or deceptive to the consumer §6-13.1-1(6)(xiii); and

    f.   Engaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding §6-13.1-1(6)(xii).

97.   The acts and omissions of ExamSoft constitute unfair and deceptive acts and are impermissible in violation of Plaintiff's rights under DTPA and Rhode Island General Laws because of Defendant ExamSoft's representing and advertising that the software had characteristics, uses, or benefits such as the ability to easily upload answers, the flawless functionality of the software itself, and customer support available and competent to service problems encountered in a timely manner.

98.   That the acts, omissions, representations and assurances of Defendant ExamSoft constitute conduct that was capable of deceiving and likely to mislead Plaintiff.

99.   ExamSoft advertised and made representations it did not intend to deliver.

100.   Plaintiff acted reasonably and relied upon Defendant ExamSoft's representations and assurances by paying Defendant ExamSoft to use the software.

101.   ExamSoft's methods, acts or practices did actually mislead and deceive Plaintiff Terranova in a material respect, engaged engaged in other conduct that creates a likelihood of confusion or of misunderstanding, and advertised the superior performance of SofTest without providing documentation to support the validity of the claim.

102. ExamSoft concealed and/or misrepresented that SoftTest and its supporting systems had a design and/or capacity defect and that the defects had the ability to, and did in fact, prevent Plaintiff from uploading his bar exams in a reasonable and timely manner.

103. The aforesaid acts and omissions constitute recklessness, intentional, and willful or wanton misconduct which warrant exemplary and/or punitive damages.

104. As a direct and proximate result of Defendant's breach, Plaintiff suffered the aforesaid injuries and damages.

## COUNT III
## BREACH OF CONTRACT

114. Plaintiff incorporates by reference ALL Paragraphs above as if fully set forth herein.

115. A valid and enforceable contract was made between Plaintiff and Defendant and the terms are sufficiently certain so that what was promised can be ascertained.

116. Plaintiff and Defendant mutually promised and agreed to the material terms of the contracts which included that Plaintiff would pay good and valuable consideration in return for Defendant's error-free and/or fully-supported exam-taking software.

117. Plaintiff and Defendant manifested assent to each other to be bound to the terms of the contracts by their conduct performing on the agreement.

118. Plaintiff paid valuable consideration for services contracted and Defendant retained this consideration.

119. Defendant breached the contract by the aforesaid acts and omissions by Defendant.

120. Much more substantially, the manner in which the Defendant breached the contract was the kind of breach that Defendant knew or should have known was particularly likely to cause serious emotional distress in Plaintiff.

121. Defendant knew or should have known that breach could cause physical injury as a result of said emotional distress related to the stress related to and wrongly, but barely, failing two bar exams due to the upload issues the night before the multiple-choice exam.

122. As a result of the breach, Plaintiff did in fact suffer serious emotional distress, financial loss, and humiliation that it has resulted in physical injury.

123. The distress and loss endured by Plaintiff is beyond mere annoyance or vexation that normally accompany breach.

124. As a direct and proximate result of the breach, Plaintiff not only lost the benefit of the bargain the contract was intended to provide, but consequentially and incidentally incurred severe emotional distress, financial loss, mental anguish, and physical injury as a result.

125. Plaintiff also incurred other incidental and consequential damage that was foreseeable to Defendant.

126. The aforesaid acts and omissions constitute recklessness, intentional, and willful or wanton misconduct which warrant exemplary and/or punitive damages.

127. As a direct and proximate result of Defendant's breach, Plaintiff suffered the aforesaid injuries and damages.

## <u>COUNT IV</u>
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALINGS

128. Plaintiff incorporates by reference ALL Paragraphs above as if fully set forth herein.

129. Plaintiff and Defendant's contract, as with all contracts, included the implied covenant of good faith and fair dealings to ensure the contractual objectives were achieved.

130. Based on the covenant, Plaintiff and Defendant promised to act in manner consistent with the purposes of the contract.

131. Defendant breached the covenant of good faith and fair dealings by the acts and omissions above incorporated by reference.

132. Defendant acted in an arbitrary and unreasonable manner in performing under the contract in violation of the covenant of good faith and fair dealings.

133. Defendant acted in bad faith or with bad motives in performance of the contract in violation of the covenant of good faith and fair dealings.

134. The aforesaid acts and omissions constitute recklessness, intentional, and willful or wanton misconduct.

135. As a direct and proximate result of Defendant's breach, Plaintiff suffered the aforesaid injuries and damages.

## COUNT V
### BREACH OF EXPRESS WARRANTY

136. Plaintiff incorporates by reference ALL Paragraphs above as if fully set forth herein.

137. Defendant expressly warrantied that its exam-taking software would work properly for Plaintiff's intended use.

138. Defendant expressly warrantied that its software was fully supported by capable and available technical staff at all hours.

139. Plaintiff paid valuable consideration for the products and services warrantied, relying upon the warranties in deciding to pay good and valuable consideration for the services rendered.

140. Defendant breached the express warranties because the software malfunctioned and there was no customer support for Plaintiff.

141. Defendant acted in manners which constitute gross negligence, recklessness, and willful or wanton misconduct.

142. As a direct and proximate result of Defendant's breach, Plaintiff suffered the aforesaid injuries and damages.

**COUNT VI**

**BREACH OF WARRANTY OF MERCHANTABILITY**

143. Plaintiff incorporates by reference ALL Paragraphs above as if fully set forth herein.

144. Defendant is a merchant as defined by Rhode Island law.

145. Before advertising and selling the exam-taking software to Plaintiff and other bar examinees, Defendant knew or should have known the uses for which the "SofTest" software was intended and could be used.

146. Defendant, by selling the software to Plaintiff, impliedly warranted that the software and support were of merchantable quality and reliable and fit for the products' ordinary and intended purposes.

147. Plaintiff reasonably relied upon Defendant's representations as to whether the software and support were of merchantable quality, reliable, and fit for his intended use.

148. Defendant sold the software to Plaintiff or participated in the stream of commerce for the goods that Plaintiff used during and following the July 2014 Bar Exams.

149. Plaintiff paid good and valuable consideration for the Examsoft products that were supposed to be of merchantable quality, and reliable and fit for the products' ordinary and intended purposes.

150. Contrary to Defendant's implied warranties that ran with the product, the products that Plaintiff purchased were not of merchantable quality, nor reliable and fit for the products' ordinary and intended purposes.

151. The uploading function of SofTest and the email system confirming answer submission was defective and/or Defendant's failure to warn Plaintiff about the known or reasonably knowable risks attendant with the products' expected and reasonable usage.

152. Defendant breached the warranty of merchantability by selling Examsoft products that were defective, and not fit for the products' ordinary and intended purposes.

153. Plaintiff did not know the product was defective and used the product in a manner that was proper and reasonably foreseeable for the intended purpose.

154. The defect existed in the Examsoft products at the time that it left control of Defendant and was downloaded and used by Plaintiff.

155. The defect was a substantial cause of the injuries to Plaintiff.

156. The aforesaid acts and omissions constitute recklessness, intentional, and willful or wanton misconduct.

157. As a direct and proximate result of Defendant's breach, Plaintiff suffered the aforesaid injuries and damages.

## <u>COUNT VII</u>
### FRAUDULENT INDUCEMENT

158. Plaintiff incorporates by reference ALL Paragraphs above as if fully set herein.

159. Defendant had a duty to accurately represent to Plaintiff Defendant's software, the features and dependability of that software, and the availability of support staff.

160. Defendant intentionally and falsely made several representations to Plaintiff that Defendant's software was reliable, error-free, and supported by capable staff when such representations were not true.

161. Defendant intentionally refused to provide and/or intentionally misrepresented to Plaintiff material information including, but not limited to:

    a.  the reliability of Defendant's software for both use and upload ability;

    b.  the lack of defects in the system;

    c.  any recent changes to the software which created the defect;

    d.  the failure to fully test the software prior to the July 2014 bar exam to determine defects that resulted which were preventable;

    e.  that the system and software had the capacity to handle uploads of a national examination;

    f.  failure to warn of defects;

    g.  failure to have protocol to remedy the defects;

    h.  the features available within the SofTest program; and

    i.  that support was available to examinees.

162. Defendant intentionally and knowingly made these misrepresentations to induce Plaintiff to purchase Defendant's software.

163. Defendant made these representations, statements, and omissions with knowledge that they were material to Plaintiffs' decision to purchase Defendant's software and pay the applicable laptop fees.

164. Defendant made these representations and omissions with knowledge that they were false and/or without a sufficient basis to make such representations.

165. Defendant intended to deceive Plaintiff about the features and support available within its SofTest software.

166. Plaintiff reasonably relied upon Defendant's representations about the reliability, features, and support of its software, which induced Plaintiff's decision concerning his purchase and use of SofTest on the July 2014 Bar exams.

167. The aforesaid acts and omissions constitute recklessness, intentional, and willful or wanton misconduct.

168. As a direct and proximate result of Defendant's acts and omissions, Plaintiff suffered the aforesaid injuries and damages.

## COUNT VIII
## INTENTIONAL MISREPRESENTATION

114. Plaintiff incorporates by reference ALL Paragraphs above as if fully set herein.

115. Defendant had a duty to accurately represent to Plaintiff Defendant's software, the features and dependability of that software, and the availability of support staff.

116. Specifically, Defendant had a duty to inform Plaintiff of risks of the use of Defendant's software and/or shortfalls in the SofTest program.

117. Defendant breached this duty by intentionally, knowingly, and/or recklessly misrepresenting the reliability, features, and support of its software incorporated by reference from paragraph 161.

118. Defendant made these representations, statements and omissions with knowledge that they were material to the decision by Plaintiff to continue to purchase and use Defendant's SofTest software.

119. Defendant made these representations, statements and omissions intentionally when they knew these were false or in reckless disregard of the truth.

120. Defendant made these representations, statements and omissions with the intent to induce Plaintiff, or knew or should have known that these representations, statements and omissions were likely to induce Plaintiff, into purchasing and using Defendant's SofTest software for the July 2014 Bar exams.

121. Defendant intended to deceive the Plaintiff by inducing Plaintiff to rely on the false representation for monetary gain.

122. Plaintiff reasonably relied upon Defendant's representations about its software to make an informed decision concerning his purchase and use of the SofTest software.

123. Plaintiff's reliance on the false representation was reasonable under the circumstances.

124. The aforesaid acts and omissions constitute recklessness, intentional, and willful or wanton misconduct.

125. As a direct and proximate result of Defendant's acts and omissions, Plaintiff suffered the aforesaid injuries and damages.

## COUNT IX
### NEGLIGENT MISREPRESENTATION

126. Plaintiff incorporates by reference ALL Paragraphs above as if fully set herein.

127. Defendant had a duty to accurately represent to Plaintiff Defendant's software, the features and dependability of that software, and the availability of support staff.

128. Specifically, Defendant had a duty to inform Plaintiff of risks of the use of Defendant's software and/or shortfalls in the SofTest program.

129. Defendant breached this duty by negligently misrepresenting the reliability, features, and support of its software incorporated by reference from paragraph 161.

130. Defendant made these representations, statements and omissions negligently and with knowledge that they were material to the decision by Plaintiff to continue to purchase and use Defendant's SofTest software.

131. Defendant made these representations, statements and omissions negligently or without sufficient knowledge of the truth of these representations, statements and omissions.

132. Defendant made these representations, statements and omissions with knowledge that negligent representations would the intent to induce Plaintiff into purchasing and using Defendant's SofTest software for the July 2014 Bar exams.

133. Plaintiff reasonably relied upon Defendant's representations about its software to make an informed decision concerning his purchase and use of the SofTest software.

134. Plaintiff's reliance on the false representation was reasonable under the circumstances.

135. The aforesaid acts and omissions constitute recklessness, intentional, and willful or wanton misconduct.

136. As a direct and proximate result of Defendant's acts and omissions, Plaintiff suffered the aforesaid injuries and damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

a. Order judgment for Plaintiff against Defendant on all Counts of the Complaint and declare that the practices detailed in this Complaint are unlawful;

b. Order, for all applicable Counts, that Defendant make Plaintiff whole by awarding compensation to make Plaintiff whole on the contract claim, including consequential and incidental damages, as well as award appropriate lost back pay, front pay, compensation for all other lost income and benefits, earning capacity, and all other relevant entitlements and emoluments resulting from violations herein for all applicable counts;

c. Order, for all applicable Counts, that Plaintiff be awarded an amount of money which will fairly compensate him for his mental anguish, emotional pain and suffering, damage to Plaintiff's reputation, loss of standing in the community, and other damages incurred;

d. Order, for all applicable Counts, that the Defendant pay Plaintiff's costs and reasonable attorney's fees resulting from this action for all applicable counts;

e. Order, for all applicable Counts, that the Defendant pay punitive or exemplary damages, as appropriate to punish Defendant for their malicious conduct, recklessness conduct, and/or callous indifference to the statutorily and/or common law protected rights of Plaintiff;

f. Order, for all applicable Counts, that Defendant pay post-judgment interest where appropriate and allowable by law;

g. Order, for all applicable Counts, that Defendant pay pre-judgment interest, including interest for all damages awarded to Plaintiff from the date the cause of action accrued, where appropriate and allowable by law;

h. Retain jurisdiction of this action to ensure full compliance; and

i. Order, for all Counts, such other relief to Plaintiff as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

*PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE*

July 22, 2017

Respectfully Submitted by Plaintiff,
STANTON TERRANOVA
By his attorney,

_/s/ Paige Munro-Delotto_
Paige Munro-Delotto, Ph.D., Esq. #9291
Munro-Delotto & Sheehan, LLC
400 Westminster Street, Ste. 200
Providence, RI 02903
P: (401) 521-4529
F: (866) 593-9755
paige@pmdlawoffices.com